<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| B.G.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>Defendant. | **Civil Action No. 24-11051 (SRC)**<br><br><br>**OPINION** |

<u>**CHESLER, District Judge**</u>

This matter comes before the Court on appeal by Plaintiff B.G. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act ("Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 78.1(b), finds that the Commissioner's decision will be **VACATED and REMANDED** for further proceedings.

## I.     BACKGROUND

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning January 5, 2022. A hearing was held before Administrative Law Judge Ricardy Damille (the "ALJ") on October 31, 2023, and the ALJ issued an unfavorable decision on March 26, 2024. Plaintiff sought review of the decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review on October 29, 2024, the ALJ's

1

decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of March 26, 2024, the ALJ found that, at step one, Plaintiff had not engaged in substantial gainful activity since the onset date of January 5, 2022. (Tr. 20.) At step two, the ALJ found Plaintiff had severe impairments of arthritis, right leg amputation, diabetes, obesity, depression, learning disorder, and ADHD. *Id.* At step three, the ALJ found Plaintiff's impairments, either singly or in combination, did not meet or medically equal the severity of any of the listed impairments set forth in the Listing of Impairments. *Id.* at 21. At step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that he could stand and/or walk for one hour in an eight-hour workday; could occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; could occasionally balance and stoop but never crouch, kneel, or crawl; required a cane to ambulate to and from a workstation; was restricted from use of right foot controls; was able to understand, remember and carry out simple instructions; and was restricted to work involving few workplace changes and only occasional decision making. *Id.* at 23-24. At step four, the ALJ further found Plaintiff could not perform his past medium-exertion work. *Id.* at 27. At step five, the ALJ determined Plaintiff could perform a significant number of jobs existing in the national economy. *Id.* Accordingly, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Act. *Id.* at 28.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded with three principal arguments: (1) the "ALJ failed to appropriately address the supportability and consistency of Dr. Uustal's opinion" (Pl.'s Br. at 12); (2) the ALJ erred by failing to consider listing 1.20(D) in the evaluation; and (3) at step four, the ALJ included a "simple tasks" limitation that, under Third Circuit law, does not adequately account for the Plaintiff's

moderate limitations in concentration, persistence, and pace.

## II.    LEGAL STANDARD

As to the burden of proof, Plaintiff bears the burden in the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). As to the harmless error doctrine, the Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination. The Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* In such a case, "the claimant has the 'burden' of showing that an error was harmful." *Id.* at 410. Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful. At the first four steps, this requires that Plaintiff also show that, but for the error, she might have proven her disability. In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in her favor, based on the existing record, she is quite unlikely to show that an error was harmful.

## III.    LEGAL ANALYSIS

### i.    The ALJ's Finding That Plaintiff Can Presently Ambulate with a Cane Is Not Supported by Substantial Evidence

The ALJ's RFC determination reads as follows:

> "After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can stand and or walk for 1 hour in an 8-hour day. He can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. He can occasionally balance and stoop but never crouch, kneel, or crawl. He needs a cane to ambulate to and from the

> workstation. He is restricted to no use of right foot controls. He is able to understand, remember and carry out simple instructions. He is restricted to work involving few workplace changes, occasional decision making."

(Tr. 23-24).

In particular, the RFC reflects the following conclusions: (1) Plaintiff can ambulate sufficiently for employment without reliance on a wheelchair; and (2) Plaintiff can ambulate sufficiently for employment when assisted by a cane.[1]  These findings are central to the ALJ's conclusion that Plaintiff can perform sedentary work on a sustained basis.

Plaintiff argues that the ALJ's RFC determination improperly assumes that Plaintiff presently has a properly fitted prosthesis, and that he can presently ambulate without significant difficulties, despite the most recent evidence of record showing that his prosthesis presently has significant problems with fit.  (Pl.'s Br. at 22-24).  Plaintiff contends that the ALJ relied on isolated inferences indicating that Plaintiff could ambulate when his prosthesis fit, while failing to account for the evidence in the record documenting ongoing prosthetic fit issues and associated functional limitations.  *Id.*

The record demonstrates that Plaintiff previously achieved periods of improved ambulation following his right leg amputation in 2017, but that conditions deteriorated over time as prosthesis

---

[1] At step four, the ALJ stated:

> While the claimant testified that he uses a wheelchair, the record does not indicate consistent wheelchair use or an inability to ambulate without the wheelchair. In fact, there is evidence of gait without an assistive device(Exhibit 6F, page 104) . The claimant had issues with his prosthetic leg; however, there are not ongoing treatment records, and he was waiting for a replacement.

(Tr. 26-27.)

fit became an issue.  (Tr. 29).  Treatment records from July 21, 2021 indicate that Plaintiff was able to ambulate with a prosthetic device when the prosthesis fit properly.  (Ex. 9F, pg. 45).  At a follow up appointment on May 16, 2022, the record notes that the prosthesis was no longer fitting well and was causing pain.  (Ex. 9F, pg. 48).  Notes from another visit on June 17, 2022 document Plaintiff's ability to "ambulate community distances without [an] assistive device, but also document Plaintiff's worsening pain due to the prosthesis."  (Ex. 6F, pg. 104).  Notes from the next and last appointment dated December 21, 2022, document "increasing problems with the permanent prothesis", and specifically indicate that "when the prosthesis was fitting properly, the patient was ambulating indoors and outdoors for unlimited distance" but that Plaintiff's "ambulation has been severely restricted" as a result of the subsequent fit issues.  (Ex. 9F, pg. 60). This evidence shows Plaintiff's best functioning under optimal prosthetic conditions, as well as the subsequent difficulties that arose as fit problems developed.

Similarly, during a consultative examination conducted by Dr. Manik Singh on August 9, 2022, Plaintiff reported swelling and blistering at the area of the prosthetic and stated that he used a wheelchair for longer distances.  (Ex. 7F, pg. 3-5).  Dr. Singh noted that Plaintiff had a poor gait, used a cane for ambulation, and was slow to rise from a seated position due to his prosthetic leg.  *Id.*

The most recent evidence in the record is Dr. Uustal's report dated September 27, 2023 – approximately one month before the administrative hearing held on October 31, 2023.  (Ex. 11F, pg. 2).  This report provides the most recent evidence about Plaintiff's continuing capacity to ambulate, and indicates that Plaintiff's prosthetic issues were ongoing and unresolved, stating that Plaintiff was "currently in process of fitting new prosthesis" and would "need frequent prosthetic

adjustments and follow up visits". *Id.* at pg. 3. This evidence reflects that, as of the most recent evaluation in the record, Plaintiff's prosthetic fit problems had not been resolved, and does not support inferences that Plaintiff presently has a prosthesis that fits and that he is successfully ambulating with it.

The records therefore present two different types of evidence: (1) evidence describing Plaintiff's best functioning in the past when the prosthesis fit properly and (2) the subsequent and more recent evidence, which documents ongoing complications affecting Plaintiff's ability to ambulate. The critical question for purposes of the RFC determination is not whether Plaintiff was ever able to ambulate effectively but rather whether the record supports a determination that Plaintiff is currently able to ambulate effectively enough on a sustained basis sufficient for employment.

An RFC determination must reflect a claimant's ability to perform work-related activities on a "regular and continuing basis," meaning eight hours a day, five days a week, rather than a hypothetical level of functioning under ideal conditions. SSR 96-8p(1). A conclusory statement without supporting evidence is "beyond meaningful judicial review." *Burnett v. Commissioner of SSA*, 220 F.3d 112, 119 (3d Cir. 2000).

Here, the ALJ relied on evidence from the past indicating that Plaintiff could, in the past, ambulate when the prosthesis fit properly. However, the decision does not cite any evidence that Plaintiff can presently ambulate at that prior level. Instead, as just discussed, the most current evidence supports the inference that Plaintiff cannot, on an ongoing basis, ambulate at the level previously achieved because of problems with the fit of the prosthesis. The decision does not identify evidence supporting the inference that the prosthetic fit problems have been resolved such

that Plaintiff can consistently ambulate without a wheelchair, using only his prosthesis or the prosthesis and a cane.   Indeed, the record repeatedly documents ongoing fit complications including swelling, blistering, pain, and the need for repeated adjustments.   (Ex. 6F, 7F, 9F).   Dr. Singh's exam, dated August 9, 2022, states: "He is wheelchair bound in the house.   He uses a wheelchair and a cane as a handheld device."   (Ex. 7F, pg. 5).   In short, the most recent medical evidence does not support the ALJ's determination that Plaintiff can ambulate sufficiently with his prosthesis and a cane to work full-time.   The ALJ does not point to any evidence from 2022 or 2023 that supports the inference that Plaintiff can ambulate effectively with only the prosthesis and cane.

While an RFC determination must reflect a claimant's current ability to function on a sustained basis, 20 C.F.R. § 416.945(a)(1), here, the ALJ relied on evidence reflecting Plaintiff's best historical functioning while failing to reconcile that evidence with the most recent medical records documenting ongoing prosthetic issues.   While an RFC determination must reflect the claimant's ability to perform work activities on a regular and continuing basis, the ALJ's determination ignored the historical evidence of variation in Plaintiff's ability to ambulate.   The ALJ overlooked the most recent evidence and, instead, chose to pick out evidence from the past when Plaintiff ambulated better.   The ALJ's assessment of Plaintiff's current ambulatory capacity is not supported by substantial evidence and disregards the evidence indicating that Plaintiff does not presently function at that level.   Nor does the ALJ explain how the record supports the conclusion that Plaintiff can presently ambulate consistently without reliance on a wheelchair.

Thus, the ALJ's assessment of Plaintiff's ability to ambulate on a sustained basis is not supported by substantial evidence.   Accordingly, remand is warranted so that the ALJ may further

evaluate Plaintiff's ability to ambulate with his prosthetic device and clarify the evidentiary basis for that determination.

### ii. The ALJ's Determination That Plaintiff Can Sit for Seven Hours is Not Supported by Substantial Evidence

The ALJ determined that Plaintiff retained the RFC to perform sedentary work, including the ability to stand and/or walk for one hour in an eight-hour workday, thus implying that Plaintiff can sit for seven hours in an eight-hour workday.   (Tr. 23).

Plaintiff argues that the ALJ's RFC findings are not supported by substantial evidence because the decision fails to adequately explain how the medical evidence supports Plaintiff's ability to perform sedentary work, particularly the ability to sit down for most of the workday. (Pl.'s Br. at 13-17).   The Commissioner argues that the ALJ reasonably evaluated the opinion evidence and adequately accounted for Plaintiff's mental limitations by restricting him to simple work with limited workplace changes.   (Def.'s Br. at 8-9).

Sedentary work generally requires the ability to sit for most of the workday.   Although the ALJ concluded that Plaintiff could perform sedentary work, the ALJ failed to identify evidence demonstrating that Plaintiff could sit for the prolonged periods required by such work.   Nor does the decision consider whether Plaintiff's ability to sit is affected by his complications with his prosthesis.   The most recent evidence of record, Dr. Uustal's report dated September 27, 2023, states that Plaintiff can sit for two to four hours in an eight-hour workday.   (Ex. 11F, pg. 2).   This is the most current assessment in the record and reflects Plaintiff's sitting capacity during the relevant period.

Dr. Gelber's October 27, 2022 report also noted that Plaintiff has difficulty walking, sitting and standing due to his prosthesis.   (Ex. 8F, pg. 1).   Later, on November 1, 2022, the state agency

8

reviewing physicians, whose opinions the ALJ found unpersuasive, limited Plaintiff to six hours of sitting. (Ex. 1A, pg. 6). The ALJ rejected these opinion as unpersuasive but failed to identify any medical evidence supporting a greater sitting capacity. No medical sources in the record concluded that Plaintiff could sit for seven hours in a workday, and the ALJ did not identify evidence supporting that inference.

The record also raised questions regarding the duration for which Plaintiff can tolerate wearing his prosthesis. As explained, *supra*, the record reflects that Plaintiff's ability to ambulate and thus, function, while wearing the prosthesis was dependent on proper fit, otherwise subjecting Plaintiff to pain and swelling. The ALJ's decision does not consider the question of whether Plaintiff retains the ability, on a continuing basis, to actually wear the prosthesis for a full workday. In fact, the ALJ's decision directly contravenes the most recent medical evidence in the record where Dr. Uustal opined that Plaintiff could only sit for two to four hours in an eight-hour workday. (Ex. 11F, pg. 2).

Despite discussing various physical impairments Plaintiff was experiencing, the ALJ did not identify evidence demonstrating that Plaintiff could remain seated for most of a workday. The state agency reviewing physicians, whose opinions the ALJ found unpersuasive, limited Plaintiff to six hours of sitting. (Ex. 1A, pg. 6). Dr. Uustal, whose opinion the ALJ also rejected, limited Plaintiff to sitting for two to four hours in an eight-hour workday, and required position changes every 30 minutes to relieve pain. (Ex. 11F, pg. 2). Dr. Gelber's report also noted that Plaintiff has difficulty walking, sitting and standing due to his prosthesis. (Ex. 8F, pg. 1). The ALJ rejected these opinions as unpersuasive but failed to identify any medical evidence supporting a greater sitting capacity.

The ALJ's determination that Plaintiff retains the RFC to work in a seated position for seven hours every day is not supported by substantial evidence.

### iii.    The ALJ Failed to Adequately Explain How Plaintiff's Moderate CPP Limitations Were Accounted for in the RFC

Plaintiff next argues that the ALJ failed to adequately account for his moderate limitations in concentration, persistence, or pace ("CPP").  (Pl.'s Br. at 24-26).  Plaintiff contends that, although the ALJ found moderate CPP limitations at step three, the RFC limits Plaintiff only to understanding, remembering, and carrying out simple instructions and performing work involving few workplace changes and occasional decision-making.  *Id.*  According to Plaintiff, this limitation does not adequately contemplate the impact of Plaintiff's moderate CPP deficits.  *Id.*

The Commissioner responds that the ALJ properly accounted for Plaintiff's mental limitations.  (Def.'s Br. at 13-14).  The Commissioner argues that the ALJ discussed the consultative psychological examination and reasonably translated the same into functional limitations restricting Plaintiff to simple work with limited workplace changes and decision-making.  *Id.*

The ALJ found moderate limitations in concentration, persistence, or pace (CPP) at step three.  (Tr. 27).  This finding was supported by the consultative psychological examination conducted by Dr. David Gelber.  Dr. Gelber documented longstanding attention and concentration problems and observed that Plaintiff did not sit still during the evaluation, frequently shifting in his seat and standing during the examination.  (Ex. 8F).  Testing revealed deficient working memory scores and a full-scale IQ of 67.  *Id.*  Although Plaintiff's adaptive functioning appeared adequately developed, Dr. Gelber noted persistent attention and concentration difficulties.  *Id.* Despite these findings, the RFC limited Plaintiff only to understanding, remembering, and carrying

10

out simple instructions and performing work involving few workplace changes and occasional decision-making.   (Tr. 28).

Under Third Circuit precedent, a limitation to simple tasks may sufficiently account for moderate limitations in concentrations, persistence or pace **only if** the ALJ provides a valid explanation linking the evidence to the RFC.   *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209-11 (3d Cir. 2019) (emphasis added).   The ALJ must articulate why the claimant's moderate limitations nonetheless permit the performance of simple work.

Here, although Plaintiff did not expressly cite *Hess*, his argument that the ALJ failed to explain how the RFC accounts for moderate CPP limitations is the same as the holding of *Hess*, and the Commissioner's opposition brief recognizes as much.   The Court therefore evaluates Plaintiff's argument under the governing standard set forth in *Hess*.

Applying that standard, the Court concludes that the ALJ's reasoning is inadequate under *Hess*.   Although the decision summarized the psychological evidence in the record, it did not explain how Plaintiff's documented concentration deficits translate into the RFC limitation to simple instructions and limited workplace changes.   The Commissioner's argument that the ALJ's decision of the evidence suffices under *Hess* is unpersuasive.   *Hess* does not permit an ALJ to rely on a limitation to simple work without any explanation; rather, it requires a link between the evidence of CPP limitations and the functional restrictions in the RFC.   That link is absent in the ALJ's decision.

Without that explanation, the Court cannot determine whether the RFC adequately accounts for the limitations identified at step three.   Accordingly, remand is warranted for further consideration of Plaintiff's mental functional limitations.

11

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's RFC determination is not supported by substantial evidence and that the decision fails to sufficiently explain how Plaintiff's moderate limitations in concentration, persistence, or pace were incorporated into the RFC.

The Commissioner's decision will therefore be **VACATED and REMANDED** for further administrative proceedings consistent with this Opinion.

An appropriate Order accompanies this Opinion.

/s/ Stanley R. Chesler

STANLEY R. CHESLER, U.S.D.J.

Dated: March 26, 2026